**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF KRISTEN MCCARTNEY, *et al.*, | Civil Action No. 24-6179 (SDW) (JRA) |
| Plaintiffs, | **OPINION** |
| v. | August 20, 2025 |
| SETON HALL UNIVERSITY, *et al.*, | |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court is Defendants Seton Hall University ("Seton Hall"), Seton Hall's Board of Trustees, and Seton Hall's Board of Regents' motion to dismiss (D.E. 36) Plaintiffs Estate of Kristen McCartney, Donna Dockery, and Sean McCartney's amended complaint (D.E. 31 ("Am. Compl.")). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78. For the reasons stated herein, the motion to dismiss is **GRANTED**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

The parties are presumed to be familiar with this matter and may refer to this Court's January 7, 2025 opinion (D.E. 29) for a summary of the factual background. In that opinion, this Court granted two motions to dismiss Plaintiffs' complaint. (*Id.*) Plaintiffs amended the complaint on February 6, 2025. (Am. Compl.) The amended complaint asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (*Id.* at ¶¶ 123–81.) Defendants

1

moved to dismiss the amended complaint on March 13, 2025 (D.E. 36); Plaintiffs opposed (D.E. 38 ("Opp.")),[1] and Defendants timely replied (D.E. 40).

## II. LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and … determine whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). Determining whether a complaint's allegations are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. Breach of Contract

Count I alleges that Defendants breached implied and express contracts that they had with Plaintiffs. (Am. Compl. ¶¶ 124, 148, 157.) As outlined in this Court's prior opinion, under New

---

[1] Plaintiffs' opposition brief was filed well after the filing deadline, and only after prompting by this Court. (*See* D.E. 37.) Plaintiffs did not explain or acknowledge their untimeliness. (Opp.) Plaintiffs also failed to comply with Local Civil Rule 15.1(b) when filing their amended complaint, as well as this Court's related August 12, 2025 order. (*See* D.E. 44.)

Jersey law, "'the relationship between a private university and its students can not be described either in pure contract or associational terms,' and the role of the court in reviewing such contract claims is limited." *Doe v. Princeton Univ.*, 790 F. App'x 379, 385 (3d Cir. 2019) (quoting *Mittra v. Univ. of Med. & Dentistry of N.J.*, 719 A.2d 693, 696–97 (N.J. Super. Ct. App. Div. 1998)). Attendance or payment of tuition at a university does not automatically create a contract. *See, e.g.*, *Keles v. Bender*, Civ. No. 17-1299, 2021 WL 568105, at *4–5 (D.N.J. Feb. 16, 2021), *aff'd*, No. 21-1497, 2022 WL 840311 (3d Cir. Mar. 18, 2022); *Mittra*, 719 A.2d at 696 (quoting *Napolitano v. Trs. of Princeton Univ.*, 453 A.2d 263, 272 (N.J. Super. Ct. App. Div. 1982)).

The standard applied to alleged contracts between universities and their students "depends on the context." *Powell v. Seton Hall Univ.*, Civ. No. 21-13709, 2022 WL 1224959, at *9 (D.N.J. Apr. 26, 2022). When a university is not acting in a specialized role, and its actions do not "go to the core of the university's pedagogical mission," a traditional contractual analysis applies. *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 383 (D.N.J. 2021) (applying traditional contract analysis to fee-based claims involving university's capacity "more as a building proprietor or business entity than an academic institution"). When a university makes an "administrative or business judgment," courts will not intervene absent "a showing of bad faith, arbitrariness or lack of prompt notice." *Beukas v. Bd. of Trs. of Fairleigh Dickinson Univ.*, 605 A.2d 776, 781–82 (N.J. Super. Ct. Law Div. 1991) (emphasis omitted). When a university exercises academic judgment or makes a decision concerning student discipline or dismissal pursuant to university policy, courts "typically limit[] their review … to a consideration of whether (1) the university substantially departed from its own rules and regulations, (2) the procedures employed by the university were fundamentally fair, and (3) the university's decisions were supported by sufficient evidence."

3

*Powell*, 2022 WL 1224959, at *9; *Beukas*, 605 A.2d at 781 (contrasting standards used in cases "involv[ing] the exercise of *academic*, rather than *administrative* or business judgment").

Each of Plaintiff's alleged contracts is discussed below, but overall, Plaintiffs' claims do not fit naturally into a contract analysis, even one altered by the standards specific to contracts between universities and students. The claims are much better suited for negligence, but as this Court has already decided, Plaintiffs failed to file their negligence claims within the statute of limitations.[2] (*See* D.E. 29 at 6–12.) Plaintiffs attempt to cast this lawsuit as a contractual one to avail themselves of a longer statute of limitations, but they have failed to establish a valid contract.

1. **Implied Contract**

The amended complaint states that "[a]lthough matriculation as a student and payment of tuition at a university does not always create a contract, in some instances courts in New Jersey have recognized an implied agreement between them." (Am. Compl. ¶ 125.) Plaintiffs do not explain what those kinds of instances are or why this case is one of them. Their only allegations in support of the implied contract are Ms. McCartney's matriculation and attendance at Seton Hall, which are concededly insufficient. (*See id.* at ¶¶ 33, 128 ("Seton Hall's acceptance of [Ms. McCartney] … despite her Epilepsy disability, explicitly, or at least tacitly, acknowledged Seton Hall's ability to ensure the health and safety of [Ms. McCartney] as a student with a disability at Seton Hall, which [her] parents relied upon …."); Opp. at 12 (alleging that implied contract is based on the "student/university relationship" and exists because Ms. McCartney "was a paying, matriculated student, with a known disability, and … Defendants were responsible for her health

---

[2] Defendants also argue that Plaintiffs' claims truly arise under the Americans with Disabilities Act ("ADA"), for which Plaintiffs have also failed to meet procedural requirements. (D.E. 36-1 ("Mot.") at 6–8.) As Plaintiffs concede (Opp. at 8), they do not bring an ADA claim.

and safety").³) Plaintiffs claim that Defendants were responsible for Ms. McCartney's health and safety "based merely on the fact that she was a student at Seton Hall," citing no authority. (Opp. at 12.)

Even generously construing Plaintiffs' filings, they have failed to support the existence of an implied contract. They do not explain or offer any case law supporting why accepting a student with a disability creates an implied contract that a university will ensure that student's safety. The cases Plaintiffs rely on concern academic or disciplinary decisions and thus call for a standard not applicable here. *Mucci v. Rutgers*, Civ. No. 08-4806, 2011 WL 831967, at *19–20 (D.N.J. Mar. 3, 2011) (reviewing breach of contract claim based on academic dismissal); *Mittra*, 719 A.2d at 694 ("At issue is whether a university's … handbook … creates a contractual relationship between the school and its students in the context of a dismissal for academic reasons); *Napolitano*, 453 A.2d at 273 (recognizing "the necessity for independence of a university in dealing with the academic failures, transgressions or problems of a student" and assessing a "problem … involving academic standards"); D.E. 29 at 14 ("The events here have nothing to do with academic or disciplinary judgment ….").

Even if Plaintiffs' cited cases were relevant, they do not establish—as Plaintiffs suggest (Opp. at 12 & n.44)—a blanket rule that implied contracts always exist between students and universities. They support that such contracts can exist but are highly contextually dependent, and attendance alone does not create them. *Mucci*, 2011 WL 831967, at *19 (quoting *Mittra*, 719 A.2d at 694); *Napolitano*, 453 A.2d at 272. Because Plaintiffs fail to offer any factual support for finding one in this case, aside from Ms. McCartney's attendance and residence at Seton Hall, they have failed to allege an implied contract.

---

³ The opposition brief does not identify which paragraphs in the amended complaint support the implied contract allegation. (Opp. at 12.)

In any event, this Court has already decided that the standard applicable to Seton Hall's challenged conduct, including designating a dorm room for Ms. McCartney after she tested positive for COVID-19, is the *Beukas* standard. (D.E. 29 at 14.) Even if Plaintiffs had pled the existence of an implied contract, the question would therefore be whether Defendants acted arbitrarily, without notice, or in bad faith.

Plaintiffs allege that Defendants "acted arbitrarily, by forcing [Ms. McCartney] into isolation … without having a legitimate plan of how to care for her health and safety if she were to have emergency complications from her Covid-19 or seizure disability," failed to provide Plaintiffs with "'prompt notice' that they were incapable of caring for [Ms. McCartney] as promised," and "acted in bad faith … by proceeding to force [Ms. McCartney] into mandatory isolation, with knowledge of her Covid-19 diagnosis, and her seizure disability, without planning to provide her with the health care and essential services that they promised her." (Am. Compl. ¶¶ 151–53.)[4] Seton Hall's actions were not arbitrary—it designated an isolation room for Ms. McCartney pursuant to a plan that was created to comply with a state requirement. (Mot. at 17.) Nothing indicates that Ms. McCartney was not on notice that she would be spending the night alone in the dormitory room or that she was unable to communicate that to her parents. (*See* Am. Compl. ¶ 91 (indicating that Ms. McCartney was able to make video calls from the room).) And Plaintiffs' allegation of bad faith is conclusory; no facts support that Defendants designated the

---

[4] Despite this Court's prior determination that the *Beukas* standard applies, between Plaintiffs' amended complaint and opposition brief, they argue that all three possible contract standards apply. In the amended complaint, they allege that "the contract between [Ms. McCartney] and the University should be viewed as a traditional contractual relationship" but argue in the alternative that they have sufficiently alleged breach of contract under *Beukas*. (Am. Compl. ¶¶ 146, 150.) Plaintiffs' opposition brief then applies the *Powell* standard. (Opp. at 13–14.) The opposition brief, in its section concerning breach of the implied covenant of good faith and fair dealing, briefly states that "the above facts and arguments clearly show that Plaintiffs have met [the *Beukas* standard]" (*id.* at 15), but nowhere earlier in the brief do Plaintiffs argue that Defendants acted arbitrarily, without prompt notice, or in bad faith. Because this Court has already held that neither a traditional contractual analysis nor the *Powell* standard applies to Plaintiffs' breach of contract allegation, this Court addresses only Plaintiffs' arguments under *Beukas*.

6

dormitory room for Ms. McCartney in bad faith. Accordingly, Plaintiffs have not pled that Defendants' conduct would have breached any implied contract.

### 2. Express Contracts

Plaintiffs allege that they entered various express contracts with Defendants, including the Restart Plan, which outlined operating procedures during the pandemic, and several representations on Seton Hall's website. (Am. Compl. ¶¶ 137–43, 148.) Plaintiffs also allege that Ms. McCartney "signed a Housing License Agreement with Seton Hall," but they do not provide that agreement or suggest anything about its contents. (*Id.* at ¶¶ 58, 135; Opp. at 10.)

#### i.   Restart Plan

The Restart Plan provided that students who tested positive for COVID-19 would be housed in dormitory rooms designated by Seton Hall. (Am. Compl. at ¶ 137.) Seton Hall would also provide "food service … health monitoring … and other essential services" to those students under the Restart Plan. (*Id.* at ¶ 138 (omissions in original).)

Plaintiffs have failed to allege that the Restart Plan was an express contract breached by Defendants. "An enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016); *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 290 (3d Cir. 2017). Plaintiffs do not allege having assented to the terms of the Restart Plan. It is not clear that they had even accessed the Restart Plan before Ms. McCartney passed away, as they requested it from Seton Hall on September 21 and 22, 2021. (Am. Compl. ¶¶ 169, 171.) They could not have assented to terms of an agreement they had not seen. In any event, this Court has already determined that if the Restart Plan could be construed as a contract, Seton Hall's implementation thereof would be assessed under the *Beukas* standard. (D.E. 29 at 14.) For the same reasons that

Plaintiffs have failed to allege a breach of an implied contract under the *Beukas* standard, they have failed to allege that Defendants breached any express contract created by the Restart Plan.[5] (*See supra* pp. 6–7.)

### ii. Representations on Website

The alleged representations on Seton Hall's website include statements that "Student safety is [Seton Hall's] top priority," that Seton Hall has a "mission … to support students in achieving … success by providing compassionate, comprehensive healthcare services that prioritize their physical and mental well-being," that "[t]hrough accessible healthcare, … [it] ensure[s] that students remain healthy," that it seeks to "collaborate with [students' parents] in order to continue a supportive, caring environment for … student[s]," that it is dedicated to "keeping students healthy," that it will "[p]rovid[e] for [its] [s]tudents' [b]asic [n]eeds," and that it will assign students with disabilities "appropriate and accessible room[s]."  (Am. Compl. ¶¶ 129–30, 132, 134, 136.)

The representations on Seton Hall's website are not contracts between Seton Hall and any of the Plaintiffs.  There are no allegations concerning Plaintiffs' assent to these statements.  *See Morgan*, 137 A.3d at 1180; *Aliments Krispy Kernels*, 851 F.3d at 290.  The representations are also vague; they lack "sufficient clarity" to bind Seton Hall to take any specific actions.  *NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp.*, 24 A.3d 777, 792 (N.J. Super. Ct. App. Div. 2011); *Cioni v. Globe Specialty Metals, Inc.*, Civ. No. 10-1388, 2014 WL 2965707, at *7 (D.N.J. July 1, 2014) (finding statement in employee manual that "business should be conducted at all times according to the highest standards of integrity and honesty" was "too vague to give rise to any

---

[5] Plaintiffs did not distinguish which of Seton Hall's actions were breaches of which alleged contracts, and they have failed to plead that Seton Hall acted arbitrarily, in bad faith, or without prompt notice in connection with any of the alleged contracts.  (*See* Am. Compl. ¶¶ 151–53.)

8

contractual obligation"), *aff'd*, 618 F. App'x 42 (3d Cir. 2015). Plaintiffs contend that these representations were "detailed contractual assurances by Defendants as to [Ms. McCartney's] health and safety on campus," but in support, they only repeat the representations. (Opp. at 9.)

In any event, the representations on Seton Hall's website, and Seton Hall's related conduct, would be assessed under the *Beukas* standard because Seton Hall is acting in a more specialized role than that of a "building proprietor or business entity," but not one concerning academic or disciplinary dismissal. *Dougherty*, 534 F. Supp. 3d at 374, 383. Because Plaintiffs have not met the *Beukas* standard, they fail to allege a breach of an express contract based on the representations on the website. (*See supra* pp. 6–7.)

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Count II alleges that Defendants breached the implied covenant of good faith and fair dealing in connection with their contracts with Plaintiff. (Am. Compl. ¶ 179.) The implied covenant of good faith and fair dealing is part of every contract in New Jersey. *Fields v. Thompson Printing Co.*, 363 F.3d 259, 270 (3d Cir. 2004). Without a valid contract, there can be no claim for a breach of the implied covenant of good faith and fair dealing. *Noye v. Hoffmann-La Roche Inc.*, 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990). Because Plaintiffs have not adequately alleged the existence of any contract, there is no basis for their claim of breach of the implied covenant of good faith and fair dealing. While the events giving rise to this case are tragic, they do not support the claims in the amended complaint.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED**, and Plaintiffs' amended complaint is **DISMISSED WITH PREJUDICE**. An appropriate order follows.

            <u>/s/ *Susan D. Wigenton*   </u>
            **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc:  Parties
   José R. Almonte, U.S.M.J.